﻿Citation Nr: AXXXXXXXX
Decision Date: 11/27/19 Archive Date: 11/27/19

DOCKET NO. 190403-7833
DATE: November 27, 2019

ORDER

Entitlement to an initial compensable rating for a right foot scar is denied.

Entitlement to an initial 10 percent rating, but no higher, prior to February 22, 2019, for a right foot disability is granted.

Entitlement to a rating in excess of 20 percent from February 22, 2019 to March 8, 2019, for a right foot disability is denied.

FINDINGS OF FACT

1. The evidence indicates that the Veteran’s scar was found to be non-painful, stable and less than 39 square centimeters.

2. Prior to February 22, 2019, the evidence indicates that the Veteran’s right foot disability manifested as moderate symptoms, to include pain on use.

3. From February 22, 2019 and thereafter, the Veteran’s right foot disability manifested in severe symptoms of pain accentuated on use and manipulation and swelling of the foot.

CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for a right foot scar have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.10, 4.14, 4.118, Diagnostic Code 7802.

2. The criteria for an initial rating of 10 percent, but no higher, prior to February 22, 2019, for a right foot disability have been met. 38 U.S.C. §§ 1155, 7104; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.25, 4.31, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5276.

3. The criteria for a rating in excess of 20 percent from February 22, 2019 and thereafter, for a right foot disability have not been met. 38 U.S.C. §§ 1155, 7104; 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.25, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5276.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served active duty in the United States Army from June 1984 to November 1991, and January 2009 to December 2009. 

In May 2018, the Board remanded the appeal for further development.

INCREASED RATING

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, otherwise the lower rating will apply, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disability upon the person’s ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. See Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods based on the facts found- a practice known as “staged” ratings.

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). The Court clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Instead, the Mitchell Court explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance (38 C.F.R. § 4.40), as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing (38 C.F.R. § 4.45). In evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011).

1. An initial compensable rating for a right foot scar

The Veteran contends that his right foot scar is such that a compensable rating is warranted.

The Board finds that the Veteran’s right foot scar is such that a noncompensable rating is warranted.

The Veteran currently has a noncompensable rating under 38 C.F.R. § 4.118, Diagnostic Code 7802. Superficial and nonlinear scars not on the head, face, or neck are evaluated under Diagnostic Code 7802. Diagnostic Code 7805 provides that any scars (including linear scars) and other disabling effects of scars should be evaluated even if not considered in a rating provided under diagnostic codes 7800, 7801, 7802, and 7804 under an appropriate diagnostic code. 38 C.F.R. § 4.118. Under Diagnostic Code 7802, a maximum 10 percent rating is warranted for burns or other scars due to other causes, not of the head, face, or neck, that are superficial and nonlinear with an area or areas of 144 inches (929 sq cm.) or greater. Note (1) indicates that a superficial scar is one not associated with underlying soft tissue damage. 38 C.F.R. § 4.118, Diagnostic Code 7802. Note (2) specifies that if multiple qualifying scars are present, or if a single qualifying scar affects more than one extremity, or a single qualifying scar affects one or more extremities and either the anterior portion or posterior portion of the trunk, or both, or a single qualifying scar affects both the anterior portion and the posterior portion of the trunk, assign a separate evaluation for each affected extremity based on the total area of the qualifying scars that affect that extremity, assign a separate evaluation based on the total area of the qualifying scars that affect the anterior portion of the trunk, and assign a separate evaluation based on the total area of the qualifying scars that affect the posterior portion of the trunk. The midaxillary line on each side separates the anterior and posterior portions of the trunk. Combine the separate evaluations under § 4.25. Qualifying scars are scars that are nonlinear, superficial, and are not located on the head, face, or neck. 38 C.F.R. § 4.118, Diagnostic Code 7802.

The Board notes that Diagnostic code 7801 applies to burn scars or scars due to other causes not of the head, face, or neck that are deep and nonlinear.

Diagnostic Code 7804 provides a 10 percent rating for one or two scars that are unstable or painful, a 20 percent rating for three or four scars that are unstable or painful, and a 30 percent rating for five or more scars that are unstable or painful. Note (1) provides that an unstable scar is one where, for any reason, there is frequent loss of covering of skin over the scar. Note (2) provides that if one or more scars are both unstable and painful, add 10 percent to the evaluation that is based on the total number of unstable or painful scars. Note (3) provides that scars evaluated under Codes 7800, 7801, 7802, or 7805 may also receive an evaluation under Code 7804, when applicable. 38 C.F.R. § 4.118, Diagnostic Code 7804.

In every instance where the schedule does not provide a 0 percent rating for a diagnostic code, a 0 percent rating will be assigned when the requirements for a compensable rating are not met. 38 C.F.R. § 4.31.

Turning to the record of evidence, in a November 2012 VA examination, the examiner noted a scar on the right heel due to September 2012 right foot surgery. The examiner reported that the scar was less than 39 square centimeters.

In a March 2013 VA examination, the examiner noted a right foot plantar fasciotomy heel spur scar diagnosed in the fall of 2012. The examiner reported that the scar was 4 centimeters, stable, not painful, and linear. 

In a February 2019 VA examination, the examiner noted a right foot, post-surgical scar. The examiner reported that that the scar was 4 centimeters by 0.1 centimeters on the medial foot. The examiner stated that the scar was not painful or unstable.

After review of the record, the Board finds that a noncompensable rating is appropriate. The evidence indicates that the Veteran’s right foot has a linear scar that is less than 39 square centimeters. The evidence does not establish that the Veteran’s scar is unstable or painful. Therefore, a 10 percent rating is not warranted under any of the applicable rating criteria.

2. An initial compensable rating prior to February 22, 2019, and in excess of 20 percent from February 22, 2019 to March 8, 2019, for a right foot disability

The Veteran contends that his right foot disability is such that a compensable rating is warranted prior to February 22, 2019, and in excess of 20 percent from February 22, 2019 and thereafter.

Under Diagnostic Code 5276, a 10 percent rating is warranted for a moderate degree of disability, characterized by weight-bearing line over or medial to great toe, inward bowing of the tendo achilles, and pain on manipulation and use of the feet. 38 C.F.R. § 4.71a, Diagnostic Code 5276.

A 20 percent rating is warranted for severe unilateral pes planus, which is characterized by objective evidence of marked deformity (pronation, abduction, etc.), accentuated pain on manipulation and use, indication of swelling on use, and characteristic callosities.

A 30 percent rating is warranted for pronounced unilateral pes planus as evidenced by marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achillis on manipulation, and is not improved by orthopedic shoes or appliance. 

The Board notes that the rating schedule allows for a maximum of 50 percent rating only if the Veteran has bilateral pes planus.

The Board notes that words such as ‘severe,’ ‘moderate,’ and ‘mild’ are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6. Although the use of similar terminology by medical professionals should be considered, it is not dispositive of an issue. Instead, all evidence must be evaluated in arriving at a decision regarding a request for an increased disability rating. 38 U.S.C. § 7104; 38 C.F.R. §§ 4.2, 4.6.

Turning to the evidence, in a July 2012 private medical record, the examiner stated that the Veteran presented with right foot pain. The examiner reported that edema was not present in the right foot, and varicosities were not present in the right lower extremity. The examiner noted that neurological examination revealed pain present in the right foot. The examiner noted that burning sensation and tingling were not present in the right foot.

In a November 2012 VA examination, the examiner noted that the Veteran has a diagnosis of plantar fascitis. The examiner reported removal of a right heel spur in September 2012. The examiner found that the Veteran did not have Morton’s neuroma, metatarsalgia hallux valgus, hallux rigidus, pes cavus, or malunion or nonunion of tarsal or metatarsal bones. The examiner further found that the Veteran did not have signs of weak foot. The examiner reported that the Veteran did not have any other foot conditions. The examiner also stated that the Veteran’s foot condition did not impact his ability to work.

In a November 2012 Medical Board Evaluation, the examiner stated that the Veteran continued to have daily symptoms following his heel spur removal and plantar fascia release in September 2012. The Veteran reported that prolonged standing or any impact activities increase the level of pain. 

The examiner stated that, with continued activity modification, the Veteran’s condition should stabilize, but the condition was unlikely to improve significantly to a point that he could return to duty. The examiner noted that the Veteran’s symptoms limited his ability to walk or stand for an extended period of time. The examiner also stated that the Veteran would should not wear heavy sacks, run, or perform high impact activities. The examiner directed the Veteran to more low impact activity, to include stationary bike or swimming, elliptical, and others. 

In a March 2013 VA examination, the Veteran was examined for clarification of the severity of the plantar fasciitis and scar measurement. The Veteran reported daily mild right foot plantar fasciitis. He also reported flare-ups once a week that were moderately severe. 

In an August 2014 VA Form 9, the Veteran stated that his private physician prescribed a shoe insert and told him to wear a permanent brace on his right foot. He also stated that he would be having a second surgery on his foot due to continued pain. The Veteran reported that his pain was constant and had gotten worse in his right foot.

In an August 2014 Buddy Statement, the Veteran’s colleague of eight years stated that he has observed the Veteran take over-the-counter medication for his discomfort with his ankle and foot. He also stated that, as time progressed, the injury progressed to the point that the Veteran has a prominent limp. He further noted that the Veteran was unable to perform his duties.

In a separate August 2014 Buddy Statement, another colleague stated that the Veteran has a hard time walking up steps or inclines, has problems getting in and out of cars, and wears a brace. The colleague noted that it was obvious that his foot condition was causing him pain and great discomfort.

In a February 2019 VA examination, the Veteran reported sharp pain at the bottom of his foot. The Veteran reported flare-ups which caused the sharpness of pain in his foot to worsen. The Veteran also stated that his foot condition made it hard for him to stand or walk for very long periods.

The examiner reported that the Veteran had right foot pain with pain accentuated on use and manipulation. The examiner also noted swelling of the foot. The examiner noted that the Veteran used shoe orthotics, but his foot condition remained symptomatic. The examiner noted extreme tenderness of the right foot that improved with use of orthotics. The examiner observed pain on examination and reported that pain contributed to functional loss.

The examiner found that the Veteran did not have Morton’s neuroma, metatarsalgia hallux valgus, hallux rigidus, pes cavus, or malunion or nonunion of tarsal or metatarsal bones. The examiner further found that the Veteran did not have signs of weak foot. The examiner reported that the Veteran did not have any other foot conditions. The examiner noted factors that contribute to functional loss, to include pain on weight-bearing, swelling, disturbance in locomotion, and interference with standing. The examiner noted that these conditions are chronic due to foot pain. The examiner further noted additional limited functional ability during flare-ups or over repeated use, stating that the increased pain makes all weight bearing activities more difficult. The examiner noted the functional impact of the right foot condition, stating that all weight bearing activities are impaired due to pain.

After review of the evidence, the Board finds that prior to February 22, 2019, the Board finds that a 10 percent rating for a right foot disability is appropriate. During this period, the private medical records indicate pain on use. Moreover, the Medical Board Examination indicates moderate, unilateral symptoms. Therefore, a 10 percent rating is warranted.

The Board acknowledges the Veteran’s contention that he should have a 20 percent rating prior to February 22, 2019. However, prior to February 22, 2019, a 20 percent rating is not warranted. The evidence during this period does not indicate severe symptoms such as marked deformity, swelling, or characteristic callosities. Therefore, the Veteran’s disability more closely approximated to a 10 percent rating prior to February 22, 2019.

From February 22, 2019, a 20 percent rating for a right foot disability is appropriate. The February 2019 VA examination establishes symptoms of pain accentuated on use and manipulation and swelling of the foot. Therefore, a 20 percent rating is warranted. 

Throughout the appeals period, the evidence did not establish marked pronation, marked inward displacement and severe spasm of the tendo achillis on manipulation. Moreover, while the February 2019 VA examination indicated extreme tenderness, the examiner noted that tenderness improved with use of orthopedic shoes or appliances. Therefore, a 30 percent rating is not warranted.

In reaching this decision, the Board has considered the Veteran’s lay and buddy statements. The Board notes that the Veteran is competent to report observations with regard to the severity of his symptomatology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Board finds these lay statements to be credible and consistent with the ratings now assigned. To the extent he argues his symptomatology is more severe, the Veteran’s statements must be weighed against the other evidence of the record. Here, the specific examination findings of trained health care professionals and documented medical treatment records are of greater probative weight than the more general lay assertions that higher ratings are warranted.

 

 

JENNIFER HWA

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C. Ford

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.